**Paul Edward ROSE, Appellant,**

**v.**

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Sept. 29, 1967.

Rehearing Denied Jan. 19, 1968.

Ronald G. Polly, Combs & Polly, Whitesburg, for appellant.

Robert Matthews, Atty. Gen., Howard E. Trent, Asst. Atty. Gen., Frankfort, for appellee.

CLAY, Commissioner.

Defendant was convicted of voluntary manslaughter and sentenced to 21 years in the penitentiary. Several grounds for reversal are urged.

Defendant was tried on October 6, 1966. The day before, in the presence of the entire jury panel, in calling the criminal docket the trial judge called Indictment No. 7990–F, which was a criminal charge against appellant for selling mortgaged property. Defendant was in the back of the courtroom and he stood when his name was read. The nature of the charge against him was not read and defendant made no response. The Commonwealth's attorney advised the court of the pendency of the present action, and with leave of court dismissed the witnesses who had been called on the other charge.

Defendant contends the calling of the other indictment the day before in the presence of the jury panel was prejudicial

and reversible error, relying principally upon Turpin v. Commonwealth, Ky., 352 S.W.2d 66. In that case we recognized that conduct of the trial judge or the Commonwealth's attorney which, within hearing of the jury, reveals such matter as would be condemned if disclosed by testimony would constitute sufficient reason for reversing the judgment. However in that case the opinion states that the calling of another indictment and the comments of the Commonwealth's attorney with respect to the nature of the other charge and the defendant's potentially dangerous character made it "impossible to believe they (the jury) might not have been influenced to the detriment of appellant when they rendered their verdict" (page 67 of 352 S.W.2d).

We do not find the conduct here to be of the prejudicial character considered in the Turpin case. The nature of the charge was not made known to the jury and there is no indication that the jury panel was in any way cognizant of this incident. Particularly in view of the nature of this case, the evidence presented, and the verdict, we have no reason to believe that the routine calling of another indictment against defendant the day before could have had any prejudicial influence on the jury. The trial court did not err in denying defendant a continuance on this ground.

This is a case of an admitted killing. Defendant claimed self-defense. He and the deceased, who was staggering drunk, engaged in an altercation. Defendant left, went home, procured a loaded pistol and returned to the scene. A scuffle ensued and defendant retreated. As the deceased approached in pursuit, defendant pulled out his gun and fired two shots at the deceased from a distance of about nine feet. The second shot was the fatal one. Defendant contends he was entitled to a directed verdict because the deceased was the aggressor and he was justified in killing him in self-defense. However, since the deceased was not armed, the significant question was presented as to whether defendant

had reason to believe his life was in danger or that he would suffer serious bodily harm. No one has the right to kill another for a threatened simple assault. Sikes v. Commonwealth, 304 Ky. 429, 200 S.W.2d 956. Defendant must have a reasonable belief of imminent danger and there must be a necessity or reasonable judgment of necessity to kill in order to avert that danger. See Martin v. Commonwealth, Ky., 406 S.W.2d 843. A jury could properly conclude that defendant had no reason to believe himself in serious danger or there was no apparent necessity for the killing. Certainly this was not a clear case of self-defense justifying a directed verdict.

It is next contended the court permitted improper cross-examination and required defendant to incriminate himself. Defendant took the stand. He admitted he had gone home and procured a pistol and "put it under my belt". On cross-examination he was asked if he pulled his shirt down over it; to which he replied, "I put it under my shirt". Defendant contends that this required him to incriminate himself, contrary to his constitutional rights, because it was evidence of another unrelated criminal offense, i. e., carrying a concealed deadly weapon. Obviously defendant's conduct just prior to the killing was so closely related to it that it was a pertinent part of the res gestae. See Kemp v. Commonwealth, 314 Ky. 57, 234 S.W.2d 144. Where such evidence is relevant, even though it shows another offense, the defendant who testifies in his own behalf cannot claim the privilege against self-incrimination. Wharton's Criminal Evidence (12th Ed.) section 731 (page 40).

In addition, if the admission of this evidence was error, it was not prejudicial. It is doubtful it occurred to anyone in the courtroom that defendant's statement that he pulled his shirt over his pistol (because it was raining) was an admission of a criminal offense. It would be stretching things entirely too far to assume the jury convicted defendant of voluntary man-

slaughter in a rather clear case because of what he did with his shirttail.

It is further contended that a murder instruction should not have been given. The fact that defendant returned to the scene of an altercation with a loaded pistol was sufficient to present the issue of whether he came back with a specific intent to kill the deceased. In addition this instruction was not prejudicial even if improperly given since defendant was convicted of voluntary manslaughter. Jennings v. Commonwealth, Ky., 349 S.W.2d 828.

Defendant finally contends the court in its instructions improperly failed to define "sudden affray". This is not required. Wooten v. Commonwealth, 299 Ky. 598, 186 S.W.2d 652.

The judgment is affirmed.

All concur.